# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------------x
LASHAUN CLARK, as Mother and Natural Guardian of ▮▮▮▮▮ and ▮▮▮▮▮ infants, and LASHAUN CLARK individually,

                              Plaintiff,

- against -

NEW YORK CITY HOUSING AUTHORITY,

                              Defendant.
------------------------------------------------------------------x

Index No.: 23502/2013E

**REPLY AFFIRMATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

      WILLIAM P. PAWLOW, an attorney duly admitted to practice law before the Courts of the State of New York, affirms the truth of the following statements under penalties of perjury:

      1.    I am a member of the law firm of Herzfeld & Rubin, P.C., attorneys for defendant NEW YORK CITY HOUSING AUTHORITY ("Housing Authority"). I am familiar with the facts and circumstances of this action based on my review of the file maintained by our office in connection with this case. I submit this affirmation in reply to the affirmation submitted by plaintiffs' counsel in opposition to the Housing Authority's motion for summary judgment pursuant to CPLR 3212 and for an Order dismissing the Complaint, and in further support of that motion. Plaintiffs' counsel has now abandoned all of the claims set forth in the Notice of Claim, the Complaint and Bill of Particulars which are premised on exposure to substances other than mold (Lescott Aff. p. 1). Accordingly, those claims must be dismissed. The same is true with regard to Plaintiffs' claims based on their alleged exposure to mold.

      2.    In support of its motion for summary judgment the Housing Authority

submitted affidavits from Dr. Hedi Leistner averring that "studies have failed to demonstrate a causal link between myotoxin-producing mold . . . and adverse health effects in either adults or children." She also averred that there are no established standards for indoor mold exposure, and that according to the Centers for Disease Control and Prevention as well as the World Health Organization, there is no evidence that a damp moldy environment is harmful to long term health. In addition, Dr. Leistner explained that it was her medical opinion that the plaintiffs' injuries were not caused by mold but rather were attributable to a genetic predisposition to allergies and esophageal reflux.

3. As the Court of Appeals held in *Cornell v. 360 W. 51st Street Realty, LLC*, 22 N.Y.3d 762, 784 (2014), these averments were sufficient to establish the Housing Authority's entitlement to summary judgment and to shift the burden to plaintiffs to show both general causation and specific causation, i.e., that mold can cause the injuries allegedly sustained by the plaintiffs and that the plaintiffs were exposed to levels of mold that are known to cause the injuries alleged. Plaintiff has not met this burden here. Accordingly, the Housing Authority's motion for summary judgment should be granted.

4. In opposition to summary judgment plaintiff relies on an affidavit by Dr. Johanning, an expert whose opinions have been repeatedly rejected by the courts as entirely lacking in scientific or medical foundation. This is certainly true of his assertion that the exposure to mold "worsened ▇▇▇▇ learning difficulties and performance issues." The fact that Plaintiffs rely on the Appellate Division decision in *Cornell* to bolster the opinions proffered by Dr. Johanning underscores the point. As the Housing Authority demonstrated in its moving papers, the Appellate Division decision relied on

2

by Plaintiffs was reversed by the Court of Appeals. In fact, the Court of Appeals rejected the opinions expressed by Dr. Johanning as scientifically unreliable and dismissed the Complaint. The same result should be reached here.

5. In *Cornell, supra,* as here, Defendants relied on expert affidavits to establish their entitlement to summary judgment. As Dr. Leistner did here, the defense expert in Cornell averred that plaintiff Cornell "was unable to prove either that mold can cause the type of injuries she alleged (general causation), or that mold in her apartment cause the specific injuries that she asserted (specific causation)." In opposition, Plaintiffs in *Cornell*, as Plaintiffs have done in this case, proffered affidavits by Dr. Johanning in an effort to raise a question of fact. In *Cornell*, the Court of Appeals rejected the opinions proffered by Dr. Johanning in their entirety. This Court should do the same.

6. First, the Court of Appeals rejected as unreliable Dr. Johanning's attempt to establish general causation and to attribute the plaintiff's bronchial-asthma, rhino-sinusitis, hypersensitivity reactions and irritation reactions of the skin and mucous membranes to the plaintiff's alleged exposure to mold because the opinion was premised on "studies that show an *association* between a damp and moldy indoor environment and the medical conditions that Dr. Johanning attributes to Cornell's exposure to mold." As the Court of Appeals explained, while a recognized "association" can provide "some support" for a claim of causation "since there can be no causation without an association (although, as explained, there can be an association without causation)," these studies are insufficient to raise a triable issue of fact with respect to general causation."

3

7. In addition, the Court of Appeals rejected Dr. Johanning's opinion regarding specific causation, noting Dr. Johanning's failure to "identify the specific disease-causing agent to which Cornell was allegedly exposed." The Court also noted Dr. Johanning's failure to "quantify [the plaintiff's] exposure." Finally, the Court of Appeals criticized Dr. Johannning's purported use of a differential diagnosis to establish specific causation because he failed to "explain what other possible causes he ruled out or in, much less why he did so. . . . Dr. Johanning does not . . explain how any diagnostic findings are consistent with his differential diagnosis. Instead, he broadly states his conclusion that Cornell's problems are mold-induced, based on differential diagnosis."

8. Despite this clear holding by the Court of Appeals, in opposition to the Housing Authority's motion Plaintiffs have now proffered an affidavit from Dr. Johanning which is even less reliable than the one rejected by the Court of Appeals in *Cornell*. Dr. Johanning provides no scientific support for his assertion that the Plaintiffs "diagnoses were caused or aggravated by the described environmental conditions inside of the apartment at 1100 Teller Avenue," other than to state that his opinion is "based on my experience as a specialist in occupation and preventative medicine, as well as the incorporation of scientific knowledge." In this regard, Dr. Johanning's conclusory statement that his opinion is "based on the provided history, the review of the available records and my objective examination and differential diagnostic methodology" helps him not at all. As the Court of Appeals held in *Cornell,* differential diagnosis requires an explanation of what alternative causes were considered and why those causes were rejected.

4

9.     Particularly egregious is the absence of any measure or quantification of the mold in the apartment, nor was there any identification of the kind of mold which was allegedly present in the apartment. As the Court of Appeals explained in *Cornell*, while "a 'precise quantification' or a 'dose-response relationship' or an 'exact numerical value' is not required to make a showing of specific causation is not required," plaintiff still has the "burden to establish sufficient exposure to a substance to cause the claimed adverse health effect." As the Housing Authority demonstrated in its moving papers (see Joao affidavit) the report prepared by Pro Chek stating that there is a "high concentration of mold spores in the bathroom" is unreliable and cannot satisfy plaintiffs' burden in this regard. That report is the only foundation for Dr. Johanning's opinion. The opinion must be rejected on that ground as well.

10.    Indeed, in *Fraser v. 301-52 Townhouse Corp.*, 57 A.D.3d 416 (1st Dept. 2008), the Appellate Division affirmed the lower court's decision to reject, as scientifically unreliable, Dr. Johanning's opinion that the plaintiff's injuries were caused by mold, based in part on the fact that "plaintiffs failed to offer a reliable measurement of the level of mold in the subject apartment."

11.    The same result was reached by the Appellate Division, Second Department *in Cubas v Clifton & Classon Apt. Corp.*, 82 A.D.3d 695, 696 (2d Dept. 2011). As the court there explained:

> In opposition to the summary judgment motion, the expert affidavits submitted by the plaintiff merely asserted, in conclusory fashion, that the injured plaintiff and the decedent became sick as a result of their exposure to toxic mold in the cooperative apartment building where they resided, which was owned by the defendant Clifton & Classon Apt. Corp. These experts failed to utilize objective standards to show that the toxic mold to which the plaintiff and the decedent were allegedly exposed was capable of causing their injuries, or that their exposure to the toxic mold was the

actual cause of their illnesses and symptoms. Accordingly, the opinions reached in the plaintiff's expert affidavits were unsubstantiated and speculative and, thus, the plaintiff failed to raise a triable issue of fact as to whether any action or omission on the part of the defendants caused the alleged injuries.

12. While the opinion does not identify the expert by name, a member of our office contacted defense counsel and was informed that it was indeed Dr. Johanning. Because the opinion proffered by Dr. Johnaning here is no better than the opinions which he proffered in *Cornell*, *Fraser* and *Cubas*, the Housing Authority's motion for summary judgment should be granted and the complaint dismissed.

13. In any event, Plaintiffs' failure to comply with the requirements of CPLR 3101(d) requires that the expert affidavits they have proffered be rejected. Thus, despite the fact that the Housing Authority served a CPLR 3101(d) demand on October 21, 2013, plaintiffs did not respond to the demand until January 25, 2017, after they had served and filed a Note of Issue and Certificate of Readiness indicating that all discovery was complete, and the day before their opposition to the instant motion was due. Nevertheless, in opposition to the Housing Authority's motion, plaintiff produced the affidavits of two medical experts. According to their affirmations both of these experts were retained by the Plaintiffs more than seven months ago.

14. Plaintiffs have proffered no excuse for their failure to disclose their experts. Pursuant to CPLR 3101(d)(1)(i) this Court has the discretion "to make whatever order may be just." It is respectfully submitted that this Court should reject the proffered affidavits. This is particularly true of the affidavits which seek to attribute ▮▮▮▮ learning disabilities to his purported exposure to mold. This theory is not only without scientific foundation (see affidavit of Dr. Joseph Maytal, annexed hereto as Exhibit N), but it is a theory that was not disclosed during discovery.

6

15. While Plaintiffs' Bill of Particulars did assert among ▇▇▇▇ injuries that he suffered from neurological deficits, those deficits were attributed to his purported exposure to lead paint, a claim which Plaintiffs have now abandoned. Because the Housing Authority is clearly prejudiced by Plaintiffs proffer of a new theory of liability for the first time in their opposition to summary judgment, the affidavits should be rejected.

16. In any event, as shown in the affidavit of Dr. Joseph Maytal, Dr. Johanning's "opinion" that ▇▇▇▇ neurological deficits can be linked to his purported unquantified exposure to mold is lacking in scientific foundation and, as is the case with the remainder of Dr. Johanning's opinions should be rejected as well.

Dated:   New York, New York
         February 8, 2017

>                             Respectfully submitted,
>
>                             HERZFELD & RUBIN, P.C.
>                             Attorneys for Defendant
>                             New York City Housing Authority
>                             125 Broad Street, 12th Floor
>                             New York, NY 10004
>
>
>                             By:_____
>                                William P. Pawlow